[S. F. No. 13379. In Bank.—February 18, 1931.]

SARAH L. BURTT as Executrix, etc., Appellant, v. BANK OF CALIFORNIA NATIONAL ASSOCIATION, as Executor, etc., et al., Respondents.

Thomas A. Keogh, John T. Thornton, Dozier & Kimball and Dreher & McClellan for Appellant.

T. C. Van Ness, Jr., Hartley F. Peart and John D. Gallaher for Respondents.

WASTE, C. J.—Plaintiff brought this action to recover damages in the sum of $5,427.14 alleged to have been occasioned to certain onions when the building in which they were stored collapsed. While the complaint contains averments of misrepresentation in the letting of the building, plaintiff's principal theory appears to be that the collapse of the structure is traceable to its noncompliance with the building laws. The defendants, owners and lessors of the building, denied the material allegations of the complaint, and cross-complained for damages, alleging that the collapse of the building was due solely and proximately to the plaintiff's negligence in overloading it. From a judgment on the cross-complaint for $8,028.95, with interest and costs, the plaintiff prosecutes this appeal, contending that the

building was an illegal structure and a nuisance *per se,* and that the defendants are therefore liable as a matter of law for all damages resulting to plaintiff, regardless of any question of negligence or misrepresentation as to the soundness of the building.

The respondents' evidence tends to show that on or about September 30, 1920, the appellant contacted their agent relative to the leasing of the two-story structure here involved, stating that he had twenty-five carloads of onions he would like to store immediately, as he was required to remove them from the docks without delay. Respondents' agent, being uncertain as to the ability of the structure to carry the weight of such a quantity of onions, stated he would seek the advice and opinion of the board of public works as to the carrying capacity of the building. Upon inquiry there, he was informed that the building was sufficiently strong to carry twenty-five carloads of onions if they were properly stacked and distributed. This information was transmitted to the appellant, who had already commenced storing the onions. Thereafter, and without respondents' knowledge, appellant stored forty-three carloads of onions in the building. On two distinct occasions prior to the collapse of the structure, the ground floor began to sag, but appellant failed to notify the respondents or their agent of this fact until, finally, the first and second floors of the building gave way under the excessive weight, causing the damage to the building for which respondents recovered the judgment appealed from. Among other witnesses, the respondents called a qualified structural engineer, who testified that in his opinion twenty-five carloads of onions could have been safely stored in the building without unduly stressing or straining its joists or girders.

Upon this and other competent evidence produced by the respondents, the trial court found that the building was at all times entirely adequate and fit for the storage of a reasonable number of carloads of onions, namely, twenty-five carloads—the amount appellant stated he intended storing; that respondents did not make any false or untrue statements concerning the building for the purpose of inducing appellant to enter into the lease, nor did they represent that the building was in good or sound condition or suitable for appellant's purposes; that before entering into the lease,

the appellant personally examined and inspected the building; that, acting upon his own initiative and judgment, appellant negligently and without respondents' consent stored an excessive and unreasonable quantity of onions in the building; and that the subsequent collapse of the building was without fault on the part of the respondents and was due solely and proximately to appellant's careless and negligent storing of an unreasonable and excessive quantity of onions.

These findings, founded as they are on substantial evidence, will permit of no judgment other than one for the respondents on their cross-complaint. And this is so even if we assume, without deciding, that the building, as urged by appellant, was not constructed as required by law, for there is no finding that any weakness or defect in the construction of the building caused or contributed in any way to its collapse. The principle that a violation of a statute or ordinance is negligence *per se* is subject to the limitation that the act or omission must proximately cause or contribute to the injury in order to bar a recovery. (*Skaggs* v. *Wiley,* 108 Cal. App. 429 [292 Pac. 132]; *Dewhirst* v. *Leopold,* 194 Cal. 424, 431 [229 Pac. 30]; *Williams* v. *Southern Pac. Co.,* 173 Cal. 525, 539, 540 [160 Pac. 660]; 19 Cal. Jur. 636, sec. 67.) Even though the structure failed to comply with the building laws, the trial court might reasonably conclude, as it did, that the sole, proximate cause of the damage to the onions and building was appellant's negligence in unreasonably and excessively overloading the building, and that such injury and damage would have resulted from such overloading even if the structure had satisfied all building law requirements. The question was one for the trial court under all the circumstances, and we cannot say that its finding that the accident was directly traceable to and was the sole and proximate result of appellant's negligence, in unreasonably and excessively overloading the building, is without support in the record.

The judgment is affirmed.

Preston, J., Shenk, J., Seawell, J., Richards, J., Langdon, J., and Curtis, J., concurred.